HENRY B. DAVIS *vs.* JOSHUA CRANE.

Dukes County.    October 23, 1922. — December 4, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Contract*, Construction, Performance and breach.

The owner of about four sevenths of the island of No Man's Land made with one desiring to purchase the entire island an agreement in writing providing that he should sell his interest for $10,000, and should "help the party of the second part [the purchaser] in whatever way he can to purchase and acquire the remaining interests at a fair valuation, and in other ways which he deems proper so to do. . . . The party of the second part agrees further to pay to the party of the first part the sum of $2,000 or part thereof, under the following conditions; whenever the party of the second part is able to purchase and acquire at a fair valuation, any part or the whole of the remaining interests in the island, as stated by the party of the first part and tabulated below, he shall pay to the party of the first part such proportional part of the $2,000 as that interest is the proportional part of all the remaining interests. It is understood that the deeds for these aforesaid interests shall be warranty deeds, and will show good and secure titles to such interests." There followed a "Table of Remaining Interests," containing under the heading, "Owner," four names, opposite each of which, under the heading "Acreage owned," were set approximate acreages, and under the heading "Fair Valuation," certain sums amounting in all to $4,600, and under the heading "To be paid to the party of the First Part," certain sums amounting to $2,000. After the agreement was made, a further name was added by agreement in the column entitled "Owner" without any corresponding entries in the other columns, the purchaser writing to the seller that "the only difference" this made was "to reduce the proportionate interest of the others when it came to paying you the additional amount . . . the total of $2,000 remains the same." The purchaser was enabled to purchase the whole island, in some instances paying sums in excess of the amounts named in the contract. In an action by the "party of the first part" against the purchaser for the $2,000 stated in the contract, it was *held*, that

(1) The figures in the table were not the maximum amount constituting the fair valuation of each of the parcels but, if the amounts paid by the defendant were in fact fair, the plaintiff was entitled to recover if he assisted the defendant in acquiring the land;

(2) It appearing that the defendant had acquired title to all the land on the island, it was immaterial that a portion mentioned in the tabular statement

as belonging to a certain person came to the defendant by conveyances from others;

(3) There being evidence that the land of others than the plaintiff was purchased by the defendant in open market, part of it at prices less than those mentioned in the tabulated statement, that, while the plaintiff was paid $10,-000 for his four sevenths, all of the remaining three sevenths were purchased for $6,141.67, and there being no evidence of any dissimilarity in the estate or that any purchase was at an unfair valuation, a finding that one parcel, which was set down in the agreement as of a "fair valuation" of $2,500 and which was purchased for $3,000, was purchased at a fair valuation, was warranted;

(4) The fact, that the defendant accepted title to some of the premises by quitclaim deeds, while the agreement called for warranty deeds, did not prevent the plaintiff from recovery, the defendant not being entitled to complain of his voluntary waiver of the provision;

(5) It appearing that the defendant had acquired all the land on the island, the defendant was not harmed by the admission, even if erroneous, of testimony of the plaintiff that he examined to see what the remaining acreage was as stated in the deeds of the owners and found it was indefinite, as well as testimony by him that, from an examination of the Probate and Dukes County records, he found that part of the land, stated in the agreement as owned by a certain person (who made no deed to the defendant,) "had already . . . [been] conveyed to" the defendant, and testimony by him in answer to a question, whether the land of the person named as owner, who did not himself convey, came to the defendant by deed of one of the others named or in part from the plaintiff.

CONTRACT upon the agreement in writing and letter from the defendant to the plaintiff set out below. Writ dated March 12, 1921.

The agreement was as follows:

"Agreement between Henry B. Davis of West Tisbury, Massachusetts, party of the first part, and Joshua Crane of Westwood, party of the second part.

"The party of the first part agrees to execute and deliver to the party of the second part, on or before July 1st, 1914 —

"A warranty deed, signed by himself and his wife, of all his right, title, and interest in real estate, land, and buildings in the island of No Man's Land, lying southwest of Martha's Vineyard, in the town of Chilmark, amounting to about four sevenths of the total acreage of the island.

"He also agrees to help the party of the second part in whatever way he can to purchase and acquire the remaining interests at a fair valuation, and in other ways which he deems proper so to do.

"The party of the second part agrees to pay to the party of the first part, on passing of the deed, the sum of ten thousand dollars ($10,000.00), provided the title of the party of the first part is good, secure, and undisputed.

"The party of the second part agrees further to pay to the party of the first part the sum of two thousand dollars ($2000.) or part thereof, under the following conditions; whenever the party of the second part is able to purchase and acquire at a fair valuation, any part of the whole of the remaining interests in the island, as stated by the party of the first part and tabulated below, he shall pay to the party of the first part such proportional part of the two thousand dollars as that interest is the proportional part of all the remaining interests. It is understood that the deeds for these aforesaid interests shall be warranty deeds, and will show good and secure titles to such interests.

### Table of Remaining Interests

| Owner | Acreage owned | Fair Valuation | To be paid to the party of The First Part |
|---|---|---|---|
| Mrs Norton | about 120 | $2500. | $1000. |
| Mayhew Bros. | about 40 | $1000. | $ 475. |
| Benjamin Crummell | about 40 | $1000. | $ 475. |
| D. G. Luce | about 4 | $ 100. | $ 50. |
| Eben Luce | | | $2000. |

[Signed] Henry B. Davis
         Joshua Crane.

Jan. 7–1914."

The letter from the defendant to the plaintiff was dated January 9, 1914. Material portions of it were as follows:

"Your very kind letter received with enclosure of our agreement and explanation of the situation as regards the other interests in the island. I am rather sorry that Mr. Luce did not see fit to sell his interest but I do not believe that it will make any difference in the long run, as I feel sure, as you say, that when they find that the State is not going to buy the island they will be willing to sell to me at a reasonable price. The important thing I think from your point of view, is for you and Mrs. Davis not to mention to anyone that you will get anything further from me as the other interests are turned over to me. In other

words, if any of these people find out the terms of our agreement they might be apt to hold you up and take advantage of the situation in regard to you, hoping to get something out of you for doing it. On my side, no one will know this, and as far as we are concerned it will apparently be settled when I pay you the agreed price. Then, whether I buy the rest, or you will get it for me, no one need know that you are to get anything more.

"I am anxious to protect you in this matter on account of our relations which I hope will always remain pleasant. As far as the State buying the island goes, it is so very indefinite that I doubt absolutely whether they would ever condemn it for such purposes as Dr. Field wants them to do. I certainly should not sell to them no matter what pressure they might try to bring, unless I absolutely had to. As I told you and Mrs. Davis I want the island for the use of my family in the summer and for what other pleasure in the line of fishing and gunning my boys and myself can get out of it.

"I have some intimate friends in the legislature and I am perfectly sure that any bills which might be brought before them for the purpose of buying the island would have no serious consideration.

"In regard to putting Eben Luce's name on the list of remaining interests, it is all right to so do, and I will insert it in the copy I send you, signed by me. The only difference this would make would be to reduce the proportionate interest of the others when it came to paying you the additional amount, so that the amounts put opposite the various names showing what I am to pay you on each of these purchases, would be reduced proportionately. Of course the total of $2000. remains the same.

"Now that we have the agreement signed between us, I will write a letter to the Clerk of the Court of Edgartown and ask him to collaborate with you in making an abstract of title of all the property, then you and he can get together whenever convenient and get out this abstract for me. When that is shown to be good and sufficient I will be ready then to pass papers with you. Meanwhile, as you ask me in your letter to do, I am willing to send you a few hundred dollars on account if you need it at the present time. I will be able to do this, probably in about a week. . . . "

In the declaration, the plaintiff alleged that he had fully complied with the requirements of the agreement, had conveyed his interest to the defendant and had assisted the defendant in acquiring title to the remaining part of the island, and that the defendant had acquired title to all the remaining parts or interests in the island at a fair valuation, but that he had not paid the plaintiff the $2,000 according to the agreement.

The defendant demurred to the declaration on the ground that the declaration did not allege "and it was not the fact, apparent on the record or otherwise, that the defendant acquired said interests at the sums stated in said table, or any of them, or at any lesser sums."

The demurrer was heard by *Wait*, J., and was overruled. The defendant appealed from the order overruling the demurrer.

The action then was tried before *Wait*, J. Material evidence and the substance of rulings asked for by the defendant and refused by the judge are described in the opinion. There was a finding for the plaintiff in the sum of $2,134.66; and the defendant alleged exceptions.

*A. L. Newton*, for the defendant.

*B. T. Hillman*, for the plaintiff.

CARROLL, J. The plaintiff owned a portion of No Man's Land, an island lying five or six miles from Martha's Vineyard, in the town of Chilmark. The defendant, desiring to obtain title to the whole island, agreed in writing for the sale to him of the plaintiff's interest. The agreement provided for the payment of $10,000 to the plaintiff for the conveyance of this interest, and it contained a provision that the plaintiff was "to help the party of the second part in whatever way he can to purchase and acquire the remaining interests at a fair valuation, and in other ways which he deems proper so to do." It was further stipulated, "The party of the second part agrees further to pay to the party of the first part the sum of two thousand dollars ($2,000) or part thereof, under the following conditions; whenever the party of the second part is able to purchase and acquire at a fair valuation, any part or the whole of the remaining interests in the island, as stated by the party of the first part and tabulated below, he shall pay to the party of the first part such proportional part of the two thousand dollars as that interest

is the proportional part of all the remaining interests." By consent of the parties the reference to "Eben Luce" was inserted in the agreement after the plaintiff had signed the same.

The plaintiff conveyed his interest in the island to the defendant and has been paid the sum of $10,000 therefor. He has also been paid the sum of $100 for the Nevers tract and $125 for the parcel belonging to Daniel G. Luce which he acquired and conveyed to the defendant. The declaration alleges that the plaintiff has fully complied with all requirements of the written agreement as modified by the defendant's letter of January 9, 1914; that the defendant has acquired title to all the remaining interests in the island at a fair valuation, but has not paid the plaintiff $2,000 or any part thereof according to the agreement. The defendant testified that he bought the Norton property for $3,000, the Mayhew property for $800, and the William B. Luce property for $50, and paid the widow of Ebenezer Luce $2,066.67 "for his interest." He agreed that the price paid for the Nevers and Daniel G. Luce parcels was correctly stated by the plaintiff. There was testimony tending to show that none of the land on the island belonged to Benjamin Crummell, but that the title to part of the Crummell tract was in William B. Luce and that a part was owned by the plaintiff and this part was included in his deed to the defendant. There was also evidence that the plaintiff assisted the defendant in securing all the land.

The defendant's demurrer was overruled, and he appealed; an answer was filed and the jury found for the plaintiff in the sum of $2,134.33. The case is before us on the defendant's exceptions.

The defendant contends that the words "fair valuation" are restricted to the figures in the schedule, and that no liability was imposed on him to pay any portion of $2,000 with respect to the purchase of any of the parcels, unless a corresponding interest was acquired at a price equal to or less than the fair valuation set forth in the schedule. The judge instructed the jury that the plaintiff in order to recover the full amount must satisfy them that the defendant had obtained title to all the land on the island; that the defendant was not obligated to pay any part of the $2,000 with respect to the purchase of any of the parcels

mentioned in the table if the purchase was made for a price in excess of the fair valuation; and if the defendant paid for any of the property more than a fair valuation, the plaintiff had no claim on the defendant for that part of the property which was secured at an excessive price. The jury were further instructed that the schedule or table was inserted for the purpose of determining what proportionate part was due if less than the whole property came to Crane.

There was no error of law in this instruction. The plaintiff's agreement was to "help the party of the second part . . . to . . . acquire the remaining interests at a fair valuation." The figures in the table were not the maximum amount constituting the fair valuation of each of the parcels. The defendant might pay more or less than the sum stated, and if the valuation was in fact fair, the plaintiff was entitled to recover if he assisted the defendant in acquiring the land. The table is incomplete. It contains no statement of the value or of the extent of the land belonging to Ebenezer Luce; the acreage of the land owned by each of the proprietors was uncertain and is stated merely as an approximation. In the defendant's letter of January 9, 1914, in reference to the addition of the Ebenezer Luce property to the list of owners, he said, "The only difference this would make would be to reduce the proportionate interest of the others when it came to paying you the additional amount, so that the amounts put opposite the various names showing what I am to pay you on each of these purchases, would be reduced proportionately. Of course the total of $2,000 remains the same." As we construe the agreement of the parties, the valuation of the properties in the table was to assist the parties in determining the proportional part of $2,000 which would be due the plaintiff if less than all the remaining parcels were acquired; but if all the parcels were acquired at a fair valuation, the valuation as stated was not controlling.

There was evidence that the defendant acquired title to all the land on the island. The jury could have found on the testimony of the defendant that he owned all the land; and the plaintiff who was familiar with the island and "with all the parties who claimed title to any interest in the Island" testified that he knew of no one who claimed any title in the island who had

not conveyed his interest to the defendant. It was therefore immaterial that the land mentioned in the agreement as belonging to Benjamin Crummell came to the defendant by conveyances from others.

As we construe the bill of exceptions, the amount paid for the Norton land was $3,000, the valuation on the table being stated at $2,500. We think it could have been found that the defendant bought the property at a fair valuation. There is nothing in the evidence to show that he paid more than its fair value. The plaintiff owned most of the western half of the island and "altogether somewhere in the neighborhood of four-sevenths of the Island." For this part he was paid $10,000. For the remainder of the land the defendant paid $6,141.67. It does not appear that there was any dissimilarity in any of the estates purchased. There was evidence that the Nevers and Daniel G. Luce tracts were bought at a fair valuation. The defendant purchased the property in the open market. On this evidence it was for the jury to determine whether the land was purchased at a fair valuation. *O'Malley* v. *Commonwealth,* 182 Mass. 196.

According to the agreement the deeds were to be warranty deeds. The defendant took title to some of the land by quitclaim deed. He accepted this title and it does not appear that he made any objection on this ground. This provision in the contract was inserted for his benefit and if he was content to take title by quitclaim deeds he cannot now complain. See *Hutchins* v. *Webster,* 165 Mass. 439, 440; *Bartlett* v. *Boston,* 182 Mass. 460, 462.

We do not think the defendant was harmed by the plaintiff's testimony that he examined to see what the remaining acreage was as stated in the deeds of the owners, and found it was indefinite. As regards his ownership of a part of the land supposed to be owned by Crummell, the plaintiff testified that he found that a part of it "had already . . . [been] conveyed to Mr. Crane," and that he ascertained this from an examination of "both Probate and Duke's County records." The defendant excepted to this and asked that it be stricken out, because "he knows nothing except what he found in the records." As has been said, there was evidence that all the real estate on No Man's Land was conveyed to the defendant. It was purchased from

others than Crummell and the defendant admitted that he never received any deed from Crummell. In these circumstances we do not think the defendant was harmed by the plaintiff's evidence, excepted to, even if it were inadmissible. As there was evidence that the defendant owned the entire island, and there was nothing to contradict the testimony, the question whether the so called Crummell estate came to the defendant by deed of William B. Luce or in part by the plaintiff's deed was not of material importance, and on the issue involved of the right of the plaintiff to recover $2,000 for aiding the defendant to acquire the remaining interests at a fair valuation, the evidence was not harmful.

The demurrer was overruled properly.

*Exceptions overruled.*